FILED BY _____ D.C.

05 JUN 21  AM 6: 4

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. (96-2312) |
| ) | |
| v. ) | |
| ) | |
| STATE OF TENNESSEE, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER

1. Upon a Joint Motion and Stipulation presented by the parties and for good cause shown, the Court hereby dismisses, with prejudice, the following court orders in this case:

A. Section I ("Remedial Measures", including Attachment A referenced therein), Section II ("Status Reports"), and Section IV ("Construction and Termination") of the March 27, 1996, Consent Decree; and

B. All provisions of September 18, 1998, Stipulation and Order.

2. Upon a Joint Motion and Stipulation presented by the parties and for good cause shown, the Court hereby enters as an order of the Court the Plan for Non-Psychiatric Medical Care, attached hereto as Attachment A, and incorporated by reference into this Order.

3. Upon a Joint Motion and Stipulation presented by the

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 6-21-05

parties and for good cause shown, the Court hereby enters as an order of the Court the Plan for Psychopharmacological Practices, attached hereto as Attachment B, and incorporated by reference into this Order.

4. Upon Joint Motion and Stipulation presented by the parties and for good cause shown, the Court hereby orders that:

(A) The Stipulation for Supplemental Relief shall be dismissed, with prejudice, six months from date of entry of this Order; or

(B) That the Stipulation for Supplemental Relief shall be dismissed earlier than six months from date of entry if:

(i) The United States and Defendants agree that Defendants have achieved substantial compliance with each provision of the Supplemental Stipulation for a period of at least six months; or

(ii) Defendants petition the Court for termination of this Supplemental Stipulation, in whole or in part, on grounds that they have achieved and demonstrated their ability to maintain compliance with its provisions at any time. Upon the filing of such petition, the United States shall have 60 days to object. If no objection is filed, the Supplemental Stipulation shall terminate as to the parts addressed by the petition. If the United States files an objection, the Court

will decide which parts of the Supplemental Stipulation shall be terminated and which parts shall remain in effect.

5. This Order is binding on all State of Tennessee agencies and/or departments that may have an effect on the operations of MMHI, and on all Defendants, and their successors and/or agents.

DATED: 6/20/2005, Memphis, Tennessee

IT IS SO ORDERED

# ATTACHMENT A

## Plan for Non-Psychiatric Medical Care

1. **Timely and effective consultation with outside providers shall be obtained as indicated for patients with medical concerns, with adequate follow-up and documentation by MMHI staff.**

    1.1 When patients need medical assessment and/or treatment that cannot be provided by MMHI, the patient shall be referred to outside medical services including, but not limited to, the emergency room at The Regional Medical Center, specialty clinics, or private practitioners.

    1.2 Information necessary to assure that the outside medical provider is aware of the patient's condition and current treatment, as well as the reason for the request for services, shall be given to the outside provider prior to sending the patient or shall be sent with the patient.

    1.3 Arrangements shall be made with outside medical providers to assure that all relevant information regarding the treatment provided and recommendations for medical follow-up, either by MMHI or by the outside provider, is provided to MMHI either prior to the patient returning to MMHI or with the patient upon return. If information is not provided by the outside medical provider, MMHI staff shall contact the provider to obtain the information.

    1.4 Any patient sent out for medical services shall be evaluated by a physician or nurse practitioner in a timely manner upon return to MMHI, with follow-up orders written as indicated.

2. **Non-psychiatric medical interventions shall be documented and integrated into treatment planning.**

    2.1 Initial Treatment Plan (ITP):

    2.1.1 Within 24 hours of admission, based on the Medical History & Physical Exam, the internist or nurse practitioner shall indicate on the Medical Problems page of the Initial Treatment Plan any chronic medical problems receiving active medical treatment and/or any medical problems that may affect the patient's psychiatric condition. The internist/nurse practitioner shall develop initial interventions to treat the identified medical problems. If a medical treatment plan protocol is initiated, then the protocol shall be completed at the time of the ITP and "see medical treatment protocol for

1

(specific medical problem)" shall be written in the intervention section of the ITP. The medical treatment protocol shall then serve as the internist's or nurse practitioner's interventions for that medical problem.

2.1.2 The treatment team, under the leadership of the attending psychiatrist, shall add or modify the discipline-specific, individualized interventions on the ITP, including medical interventions, as necessary to address the patient's current needs, problems, and/or behaviors.

2.2 Master Treatment Plan (MTP):

2.2.1 The MTP shall include medical problems, related objectives, and interventions or protocols initiated to address medical problems.

2.2.2 The internist or nurse practitioner shall initiate Medical Treatment Plans as medical problems are diagnosed. Thus, a Medical Treatment Plan can be incorporated into the ITP (if the Medical Treatment Plan is initiated prior to the MTP) or into the MTP. A medical problem shall require a Medical Treatment Plan if the problem is a chronic problem requiring active medical treatment and/or a problem that may impact the patient's psychiatric condition. Medical problems that do not meet these criteria shall be addressed through the physician's orders and nursing care plans.

2.2.3 The attending psychiatrist is ultimately responsible for the total care of his/her patients, including medical treatment. The internist or nurse practitioner functions in a consultative role to the attending psychiatrist and is responsible for the immediate medical care of the patient. Together, the attending psychiatrist and the internist or nurse practitioner are considered the "Responsible Staff" for providing interventions addressing medical problems on the Medical Treatment Plans.

2.3 Treatment Plan Reviews (TPRs):

2.3.1 Interdisciplinary TPRs shall include a verbal review of the status of problems identified on the MTP, including medical problems, and continued rationale for any problems that were deferred. The TPR shall address the efficacy of staff's interventions, including medical interventions, and any revisions needed.

2.3.2 If a patient is not making progress as expected toward the medical goals and objectives of the MTP, the treatment team shall, in a timely manner, consider the modification of treatment interventions, including medical interventions.

3. **Sufficient coverage for non-psychiatric medical care shall be provided.**

   3.1 A full-time internist shall be assigned to work on weekdays during the daytime. The equivalent of a half-time internist shall be available on weekdays during the evenings. An internist shall be available to provide consultation to the nurse practitioners and psychiatrists at all times.

   3.2 Two full-time nurse practitioners shall be assigned to work on weekdays during the daytime. A nurse practitioner shall also be assigned to work on Saturdays and Sundays, plus state holidays.

   3.3 During the hours that an internist or nurse practitioner is not present at MMHI, the OD psychiatrist shall be responsible for the provision of non-psychiatric medical care.

4. **Performance improvement activities shall be implemented to ensure that non-psychiatric medical care is consistent with accepted standards of care.**

   4.1 Medical Staff peer review processes shall include indicators related to non-psychiatric medical care.

   4.2 Provision of outside medical services shall be monitored to assure that services are provided in a timely manner, that appropriate clinical information is received from the outside medical service, and that treatment recommendations are followed-up by MMHI staff.

   4.3 Actions shall be taken as indicated to improve the quality of non-psychiatric medical care.

# ATTACHMENT B

## Plan for Psychopharmacological Practices

1. **Psychopharmacological care shall be provided in a timely manner, including monitoring and follow-up.**

    1.1  Each patient's need for psychopharmacological treatment shall be assessed by the admitting psychiatrist at the time of admission and by the attending psychiatrist at the time of the first contact with the patient and on an on-going basis thereafter. The initial rationale for psychopharmacological treatment shall be documented in the psychiatric assessment, with the rationale for modifications in psychopharmacological treatment documented in the psychiatrist's progress notes.

    1.2  Psychiatric progress notes shall include the patient's subjective response to treatment, including psychopharmacological interventions, objective findings (such as mental status or test results), an analysis of the effectiveness of treatment, including psychopharmacological treatment, and the rationale for any medication changes, including dosage, method of administration, schedule of administration, as well as discontinuation of medications.

    1.3  Psychiatric progress notes shall also provide clear justification for psychopharmacological interventions that are outside usual and customary treatment, including psychotropic medication above usual does, multiple simultaneous medication changes, and use of polypharmacy.

2. **Psychopharmacological consultation shall be available to provide input to MMHI psychiatrists regarding psychopharmacological practices.**

    2.1  The MMHI psychiatrists shall participate in monthly peer consultation regarding psychopharmacological practices.

    2.2  Psychopharmacological consultation shall also be available from an appropriately qualified professional, upon request.

    2.3  Consultation shall be available regarding general psychopharmacological practices and on a case-specific basis.

3. **Psychopharmacological interventions shall be documented and integrated into treatment planning.**

   3.1 Initial Treatment Plan (ITP):

   3.1.1 The admitting psychiatrist shall develop ITP interventions for psychiatry, including psychopharmacological interventions, intended to initiate measures that will provide for the safety of the patient and/or others as well as to stabilize the patient's acute psychiatric symptoms/behaviors.

   3.1.2 The attending psychiatrist shall have the final authority for approving the ITP, as evidenced by his/her dated signature on the ITP form. The attending psychiatrist shall make modifications to the ITP, including psychopharmacological interventions, as indicated, based on the attending psychiatrist's plan for on-going treatment of the patient.

   3.1.3 The treatment team, under the leadership of the attending psychiatrist, shall add or modify the discipline-specific, individualized interventions on the ITP, including psychopharmacological interventions, as necessary to address the patient's current needs, problems, and/or behaviors.

   3.2 Master Treatment Plan (MTP):

   3.2.1 The MTP shall include the patient's current diagnosis, problem descriptions and objectives related to discharge barriers and other treatment issues, and interventions, including psychopharmacological interventions, identified to address the discharge barriers and other treatment issues.

   3.2.2 The attending psychiatrist shall include in his/her interventions psychopharmacological interventions selected to address the patient's psychiatric symptoms/behaviors. The attending psychiatrist's progress notes shall document the effectiveness of psychopharmacological interventions, as well as the rationale for any changes in these interventions.

   3.3 Treatment Plan Reviews (TPRs):

   3.3.1 Interdisciplinary TPRs shall include a verbal review of the status of problems identified on the MTP, including diagnoses, and continued rationale for any problems that were deferred. TPRs shall include a review of medications, including medication changes and use of PRN and STAT medications. The TPR shall address the efficacy of staff's interventions,

including psychopharmacological interventions, and any revisions needed.

    3.3.2    If a patient is not making progress as expected toward the goals and objectives of the MTP, the treatment team shall, in a timely manner, consider the modification of treatment interventions, including psychopharmacological interventions.

## 4. Performance improvement activities shall be implemented to ensure that psychopharmacological practices are consistent with accepted standards of care.

    4.1    Medical Staff peer review processes shall include indicators related to psychopharmacological practices.

    4.2    The MMHI Pharmacy and Therapeutics Committee shall review information relative to psychopharmacological practices and make recommendations for improvements to the MMHI Medical Staff and Quality Council.

    4.3    Actions shall be taken as indicated to improve the quality of psychopharmacological care.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 10 in case 2:96-CV-02312 was distributed by fax, mail, or direct printing on June 21, 2005 to the parties listed.

---

Verlin Hughes Deerinwater
U.S. DEPARTMENT OF JUSTICE
10th & Pennsylvania Avenue, N.W.
Washington, DC 20035--640

Kathleen A. Maloy
ATTORNEY GENERAL AND REPORTER
426 Fifth Avenue North
Second Floor
Nashville, TN 37243--048

William G. Maddox
U.S. DEPARTMENT OF JUSTICE
601 D-Street, N.W.
Room 5128
Washington, DC 20004

Honorable Bernice Donald
US DISTRICT COURT